IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Kenneth W. Walters,       )<br>                           )<br>    Plaintiff,            )<br>                           )<br>vs.                        )<br>                           )<br>Thomas & Betts Corporation,)<br>                           )<br>    Defendant.             )<br>                           ) | C/A No.: 0:13-1980-MBS-SVH<br><br><br><br>REPORT AND RECOMMENDATION |

In this employment discrimination case, Kenneth W. Walters ("Plaintiff") is suing his former employer, Thomas & Betts Corporation ("Defendant"). Plaintiff alleges the following causes of action: (1) unlawful discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act Amendments Act, 42 U.S.C. §12102, *et seq.* ("ADAAA"); (2) unlawful discrimination in violation of Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"); (3) retaliation in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); (4) breach of contract; and (5) wrongful discharge in violation of public policy. [Entry #1-1]. This matter comes before the court on Defendant's motion for summary judgment filed on February 28, 2014. [Entry #17]. This matter having been fully briefed [Entry #21, #22], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and

recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendant's motion for summary judgment.

I.  Factual Background

Plaintiff was employed by Defendant at its Lancaster, South Carolina, facility from 2005 until he was terminated on March 27, 2012. Pl. Dep 18:9–14;[1] Entry #1-1 at 7. At all times relevant to this dispute, Plaintiff was over fifty years of age. [Entry #1-1 at 7]. Defendant's Lancaster plant manufactures light duty, steel utility poles. Pl. Dep. 40:3–20. Although Plaintiff performed numerous functions during his time with Defendant, he was primarily assigned to run a seam welding machine. *Id*. at 42:16–21. Preston Dennis ("Dennis") became Plaintiff's supervisor sometime in 2007 or 2008. *Id*. at 43:22–44:9. In the summer of 2011, Dennis was promoted to plant superintendent and Joe Tucholski ("Tucholski") became Plaintiff's supervisor.

   A.  Plaintiff's Relevant Medical Conditions

Sometime in 2009 or 2010, Plaintiff was diagnosed with Hepatitis C. *Id*. at 65:2–9. The course of treatment required Plaintiff to take a large number of pills daily and to travel to his doctor's office once a week to receive a shot. *Id*. at 112:6–18. The Hepatitis C treatments required Plaintiff to constantly drink water, which necessitated that he make frequent trips to the restroom throughout the day. *Id*. at 119:3–18. On September 22, 2010, Plaintiff requested and was granted FMLA leave for treatment of his Hepatitis C

---

[1] Plaintiff's deposition can be found at Entry #17-2.

and for a non-related back injury.[2] [Entry #17-3 at 11]. Between September 2010 and March 2011, Plaintiff submitted 12 doctor excuses for missed work as part of his FMLA-protected leave, and none of this time was included in his attendance record or counted against him in any way. *Id.* at 84:14–93:8. On February 28, 2012, Plaintiff submitted a renewed FMLA request to Carla Hunter ("Hunter") in Defendant's HR department. *Id.* at 11–16. This request specifically indicated that he would need to be absent regularly for the next year. *Id.*

> B.    Plaintiff's Work Performance

On April 20, 2010, Plaintiff received a verbal warning for his unacceptable attendance record. [Entry #17-3 at 8–9]. On August 16, 2010, he received another verbal warning for violating Defendant's phone policy by using the company phone for personal use. *Id.* at 10. On his annual performance evaluation in October 2010, Plaintiff received an overall rating of "needs improvement." [Entry #17-3 at 17–19]. According to the evaluation, Plaintiff needed to improve his attendance, paperwork, and production. *Id.* On December 8, 2010, Plaintiff was counseled for his attendance record. *Id.* at 33. Plaintiff received a second counseling for attendance on February 10, 2011. *Id.* at 34–35. Although Plaintiff was informed that his attendance had improved in that he had not missed any days or been tardy day for a 60-day period from his last tardy, he was tardy on February 4, 2011, and it caused the second counseling. *Id.* at 20, 34–35. Plaintiff was informed that Defendant expected that Plaintiff would continue to improve on his attendance. *Id.*

---

[2] Plaintiff does not allege in his complaint that his back injury constitutes a disability.

Plaintiff was counseled for unacceptable behavior on July 31, 2011, following a verbal altercation with another employee. *Id*. at 36. The investigation revealed that both employees engaged in what was essentially a verbal assault, which violated company policy. *Id*. Plaintiff was warned that this was his final warning, and that any further violation of company policy could be cause for additional disciplinary action, including termination of his employment. *Id*.

Plaintiff's work performance, specifically the quality of his welds, also failed to improve. This was despite several attempts by Defendant to correct and improve his performance, including bringing in a weld technician from Lincoln Welding to train and work with Plaintiff. Pl. Dep. 103:24–104:6. On Plaintiff's performance evaluation in October 2011, Plaintiff again received an overall rating of needs improvement on his annual performance evaluation. [Entry #17-3 at 38–39]. The evaluation advised Plaintiff that he needed to improve his work performance, attendance, and attitude, and that he needed to stay in his own work area. *Id*. Two days later, on October 4, 2011, Tucholski decertified Plaintiff as a seam welder, and he was moved to the position of maintenance welder as a result of his poor welds. [Entry #17-3 at 40; #17-4 at 4]. When another seam welder position later became available, Defendant asked Plaintiff if he wished to try to improve and make one more attempt to satisfy Defendant's production and quality expectations. [Entry #17-4 at 6]. Plaintiff accepted Defendant's offer. *Id*.

On March 8, 2012, Dennis met with him to discuss the need for improvement with his work performance. *Id*. at 47. On March 23, 2012, Plaintiff was yet again counseled that he needed to improve his work performance or risk having his employment

4

terminated. *Id.* Seeing no improvement, Tucholski, Willard Preston (Tucholski's supervisor), and Plant Manager Mike Scuttela collectively made the decision to terminate Plaintiff's employment, effective on March 27, 2012. *Id.*; Entry #17-4 at 7.

II.  Discussion

  A.  Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing

5

law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.  Analysis

   1.  ADAAA Claims

      a.  Failure to Accommodate

To establish a prima facie failure-to-accommodate claim, a plaintiff must allege facts showing: "(1) that [he] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [his] disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; (4) that the [employer] refused to make such accommodations." *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387, n. 11 (4th Cir. 2001)[3] (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2nd Cir. 1999)).

Assuming Plaintiff can prove the first three elements related to his Hepatitis C, he has failed to show that Defendant refused to make a reasonable accommodation. Although Plaintiff testified that Tucholski complained about how often Plaintiff was away from his workstation, Plaintiff did not testify that Tucholski refused to allow him to go to the bathroom or to get water when he needed it. Specifically, Plaintiff testified as follows:

---

[3] *Rhoads* was decided prior to the passage of the ADA Amendments Act of 2008 ("ADAAA"); however, the Fourth Circuit has not stated whether the elements have changed in light of the ADAAA. Because the ADAAA primarily addresses the definition and determination of "disability" and does not appear to impact the elements of a prima facie case at issue here, the undersigned relies on the elements set forth in *Rhoads* in analyzing Defendant's motion for summary judgment.

6

> Q. Okay. It also says in Interrogatory 20 Number 11, it says, please identify any accommodation you requested from Thomas & Betts, including but not limited to the accommodation requested, who you asked for it from, the date which you did it, all that stuff. And in response you said that you made numerous requests to Joe that he be allowed to go to the bathroom during brief lulls. Did Joe ever tell you you couldn't go to the bathroom?
> A. He complained about it all the time.
> Q. And he complained about you not being at your workstation; right?
> A. Right.
> Q. Did he ever complain about specifically you using the bathroom or just that you weren't at your workstation?
> A. Both.
> Q. So he specifically said, you go to the bathroom too much and I want you to go less?
> A. Well, you want me to stay on that job, that's what it means, I mean.
> Q. But did he or didn't he say it that way or something like it?
> A. Or something like it.
> Q. Or was he more just telling you he wanted you to stay at your spot without any reference to the restroom?
> A. Joe wanted me to make him look good to his superiors and whatever I had to do to do that, that's what he wanted me to do. He did not want to look bad.

Pl. Dep. 151:20–153:2. Additionally, Plaintiff testified that Tucholski and Dennis complained about his leaving his workstation because they believed that he was "out running around, talking." *Id*. at 122:18–22. Plaintiff further testified that although Tucholski had told him he should use a larger container of water, he was allowed to drink water at his workstation, even though it was against the rules. *Id*. at 120:19–121:9. Therefore, though Plaintiff testified that Tucholski and Dennis complained about him being frequently away from his workstation, which he acknowledged was because they thought he was talking to others, Plaintiff has not shown that Defendant refused to reasonably accommodate Plaintiff. The undersigned recommends Defendant be granted summary judgment on Plaintiff's claim for failure to accommodate under the ADAAA.

7

b. Wrongful Discharge Under the ADAAA

Plaintiff appears to assert a claim for wrongful discharge under the ADAAA.[4] [Entry #1-1 at 8–9]. To establish a prima facie case of wrongful discharge based upon a disability, Plaintiff must show: (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n. 9 (4th Cir. 2004); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696 (4th Cir. 2001).

Assuming that Plaintiff can show the other elements of the prima facie case, Plaintiff's claim of wrongful discharge cannot proceed because he cannot show that he was fulfilling Defendant's legitimate expectations at the time of his termination. The undisputed evidence shows that Plaintiff was not performing his welds. For instance, Plaintiff admitted that he was having trouble doing the job the way Tucholski instructed him to do it. Pl. Dep. 126:6–10. Plaintiff also testified that Tucholski had told him that he needed to be more productive at his job:

> Q. And so what he was saying here was you're not getting as many inches of seam weld as I want you to get as your supervisor?
> A. Right.

---

[4] Plaintiff appears to make no distinction between his failure to accommodate and wrongful discharge claims under the ADAAA [Entry #1-1 at 9–10; #21 at 5–12], though the claims are analyzed using different elements. In the interest of completeness, the undersigned analyzes the facts as relevant to a wrongful discharge claim under the ADAAA, but notes that Plaintiff failed to provide any argument with regard to such a claim and the court may consider it withdrawn.

8

> Q. Was he asking you to get more inches in seam weld than he was asking anybody else to get?
> A. No, sir.
> Q. Just the same?
> A. (Nodding head.)

*Id*. at 102:9–17. Plaintiff admitted that on October 3, 2011, he was decertified as a seam welder. *Id*. at 107:20–6. These problems with Plaintiff's performance were also documented in his performance reviews. [Entry #17-3 at 17–18, 38–39]. On March 8, 2011, Dennis met with Plaintiff to discuss the problems with his work quality and behavior. Pl. Dep at 124:5–21. Because the undisputed evidence shows that Plaintiff had been informed that his work was not meeting production standards on multiple occasions before he was terminated, Plaintiff is not able to show that he was meeting Defendant's legitimate expectations at the time of his termination. Therefore the undersigned recommends Defendant be granted summary judgment on Plaintiff's wrongful discharge claim under the ADAAA.

          c.      Retaliation under the ADAAA

The ADAAA prohibits retaliation by an employer against an employee who opposes any practice made unlawful by the ADAAA. 42 U.S.C.A. § 12203(a). To prevail on a retaliation claim, the employee must first establish a prima facie case of retaliation by showing that (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id*.; *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected

activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action AgainstPoverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

If the plaintiff satisfies this burden, then his employer must articulate a legitimate non-retaliatory reason for its action. *Id*. Once the employer meets this burden of production, the plaintiff must show that the employer's articulated reason is pretext for forbidden retaliation. *Id*.

Plaintiff alleges he engaged in protected activity by informing Hunter, the Defendant's HR Coordinator, that he was being treated unfairly by Tucholski.[5] Pl. Dep. 128:23–129:20; 143:4–9. There is no evidence in the record, however, that the individuals who made the decision to terminate Plaintiff had any knowledge that Plaintiff had complained of discrimination to HR. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (observing that knowledge of the alleged protected activity by the decision makers is essential to a retaliation claim). In fact, Hunter has no recollection of Plaintiff even complaining that he was being treated unfairly. [Entry #17-9 at 4–5].

Because Plaintiff cannot show that the decision makers knew of his protected activity when they decided to terminate him, he is unable to show a causal connection between the protected activity and his termination. Therefore, the undersigned

---

[5] Plaintiff alleges for the first time in his response that his request for an accommodation constitutes a protected activity. As Plaintiff's complaint does not set forth any allegations of protected activity other than an alleged report to HR of harassment and intimidation based on his disability, his argument that his request for accommodation constituted protected conduct is not before the court. The undersigned also notes that such a claim would be factually identical to his wrongful discharge claim under the ADAAA.

10

recommends Defendant be granted summary judgment based on Plaintiff's retaliation claim under the ADAAA.

### 2. ADEA Claim

Plaintiff appears to have withdrawn his claim under the ADEA, as he has not made any argument related to this claim or otherwise set forth a prima facie case in his response to summary judgment. Therefore, the undersigned recommends Defendant be granted summary judgment on Plaintiff's ADEA claim.

### 3. FMLA Claim

To establish a prima facie case of retaliation under the FMLA, Plaintiff must show: (1) he made use of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) that there is a causal connection between his protected activity and the employer's adverse employment action. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). It is undisputed that Plaintiff exercised a protected right by requesting FMLA leave in September 22, 2010, and February 28, 2012, and that his requests were granted. It is also undisputed that Plaintiff was adversely affected by an employment decision when he was terminated on March 27, 2012. Plaintiff argues that because he was counseled three months after his September 2010 request for FMLA leave and terminated one month after his February 2012 request for FMLA leave, he has demonstrated a causal connection between his protected activity and his termination for the purposes of his prima facie case. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) ("While evidence as to the closeness in time "'far from conclusively establishes the requisite causal connection, it certainly

satisfies the less onerous burden of making a prima facie case of causality.'") (citations omitted).

The burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for Plaintiff's discharge. Defendant maintains that Plaintiff was terminated because of persistent performance deficiencies. [Entry #17-3 at 47].

Defendant having articulated a legitimate non-discriminatory reason for terminating Plaintiff, the burden shifts back to Plaintiff to show that Defendant's proffered reason was pretextual. Plaintiff makes the following arguments to show pretext: (1) Plaintiff began receiving more frequent counseling after requesting and being granted FMLA leave; (2) Plaintiff was counseled twice regarding the same attendance records; (3) Plaintiff was counseled once for what he characterized as "horsing around" with another employee; (4) Defendant is missing Plaintiff's annual reviews prior to 2010; and (5) Defendant allowed Plaintiff to return to welding after he was decertified. [Entry #21 at 17–21].

Plaintiff argues that after he made a request for FMLA leave in September 2010, he was counseled more frequently than in his previous five years. A review of the evidence reveals that he first received two verbal warnings in 2010 prior to requesting FMLA leave. [Entry #17-3 at 8–10]. After requesting FMLA leave, Plaintiff was counseled about his attendance in December 2010, and after he was late again on February 4, 2011, he was counseled again. *Id.* at 33–35. Plaintiff points out that this second counseling states that his attendance had improved because he had 60 days without missing work or being tardy. However, on the 63rd day, Plaintiff was tardy,

12

which necessitated the second counseling. *Id*. There is no evidence that Plaintiff's counseling regarding his attendance was related to his FMLA leave in any way, as his FMLA leave is not reflected in his attendance record.

Plaintiff's attempt to cast suspicion over Plaintiff's third counseling to show pretext is also unavailing. Plaintiff and a coworker, Brad Walker, were involved in verbal altercation that violated Defendant's policy. [Entry #17-3 at 36]. Plaintiff points out that Dennis testified that Walker was also disciplined for the incident, but Hunter testified that Walker was terminated for attendance prior to facing discipline regarding the altercation with Plaintiff. Though Dennis' recollection and Hunter's recollection differ, the testimony is consistent in that Plaintiff was treated at least as favorably as his coworker involved in the altercation. Though Plaintiff was counseled more often in 2010 and 2011 than in his previous years, it appears that the counseling began prior to his request for FMLA leave. Further, there is no evidence that other employees were treated differently for the same conduct.

Plaintiff also asserts that the absence of performance reviews from prior years calls into question Defendant's assertion that his performance was poor. [Entry #21 at 19–20]. Even assuming that Plaintiff's prior performance reviews were positive, Plaintiff has failed to show that the information contained in Plaintiff's more recent performance reviews was false. Plaintiff has not disputed the accuracy of his attendance records and admitted that he was having trouble doing the job the way Tucholski instructed him to do it. Pl. Dep. 126:6–10. Plaintiff further admitted that Tucholski had informed him he was not getting the number of inches of seam weld required of all seam welders. Pl. Dep.

13

102:9–17. Though Plaintiff received modest raises during 2010–2011, he admitted that his supervisor was not satisfied with his performance.

Finally, Plaintiff argues that Defendant's claims of poor performance are pretextual because a short time after Tucholski decertified Plaintiff as a welder, he allowed him to return to the position. In support of his argument, Plaintiff cites to the following testimony from Tucholski:

> Q: Now did he at some point in time go back to seam welding?
> A: Yes, he did. We had an opening that came up, and we asked Kenny at that time if he wanted to take it on, if he was willing to improve, try it one more time and see how he could come along with the welding process of the machine, and he accepted it.

Tucholski Dep. 21:17–24. Tucholski's testimony that he gave Plaintiff another chance is insufficient to show that Plaintiff's termination for performance reasons was pretextual. Plaintiff has not met his burden of showing that Defendant's proffered reason for terminating Plaintiff was pretext for retaliation under the FMLA. Therefore, the undersigned recommends Defendant be granted summary judgment on his FMLA retaliation claim.

### 4.    State-Law Claims

Plaintiff asserted state-law claims for breach of contract and wrongful discharge in violation of public policy. Plaintiff makes no argument regarding his breach of contract claim and the undersigned recommends it be dismissed with prejudice as withdrawn by Plaintiff.

With regard to his claim for wrongful discharge in violation of public policy, Plaintiff argues generally that terminating an employee due to a disability or for taking

14

FMLA leave "should be found to run contrary to the public policy of South Carolina." [Entry #21 at 22]. South Carolina courts have consistently held that a plaintiff cannot maintain a claim for wrongful discharge in violation of public policy where there is a statutory remedy available to redress the discharge in violation of public policy. *See, e.g., Lawson v. S.C. Dep't of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000) (public-policy claim not allowed where employee had remedy under state Whistleblower Act); *Dockins v. Ingles Mkts., Inc.*, 413 S.E.2d 18, 19 (S.C. 1992) (public-policy claim not allowed in retaliatory-discharge case where employee had remedy under Fair Labor Standards Act); *Epps v. Clarendon County*, 405 S.E.2d 386, 387 (S.C. 1991) (public-policy claim not allowed where employee had remedy under 42 U.S.C. § 1983); *see also Stiles v. Am. Gen. Life Ins. Co.*, 516 S.E.2d 449, 452 (S.C. 1999) (Toal, J., concurring) (stating that the cause of action "is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."). Therefore, because Plaintiff had remedies under the ADAAA and FMLA, Defendant is entitled to summary judgment on Plaintiff's claim of wrongful discharge in violation of public policy.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #17] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 17, 2014
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).